UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MARY GENTRY,

        *Plaintiff*,

v.

LEADING EDGE RECOVERY
SOLUTIONS, LLC,

        *Defendant*.

Civil Action No. 13-3398 (PGS) (LHG)

**MEMORANDUM AND ORDER**

**SHERIDAN, U.S.D.J.**

      This matter comes before the Court on Defendant Leading Edge Recovery Solutions, LLC 's ("Leading Edge" or "Defendant") Motion to Dismiss Plaintiff Mary Gentry's Complaint for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2), or in the alternative, to dismiss or transfer this matter to the United States District Court for the Southern District of New York for improper venue pursuant to FED. R. CIV. P. 12(b)(3) and 28 U.S.C. § 1404 (ECF No. 5).[1] In her Complaint, Plaintiff alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. The Court decides this matter without oral argument pursuant to FED. R. CIV. P. 78(b). For the reasons set forth herein, Defendant's Motion to Dismiss for lack of personal jurisdiction is denied as

---

[1] In its Reply Brief in Support of its Motion, the Defendant stipulated, "[b]ased on . . . additional information and documents provided by [the] [P]laintiff[,]" that "the jurisdictional requirements have been satisfied." (Def.'s Reply Br. in Supp. of Mot. to Dismiss or Transfer Venue ("Def.'s Reply Br.") at 1 n.1). Defendant therefore withdrew its Motion to Dismiss for lack of personal jurisdiction. *Id.* Accordingly, this Court's analysis is limited to Defendant's Motion to Transfer this matter for improper venue and Defendant's Motion to Dismiss for lack of personal jurisdiction is denied as moot.

moot and Defendant's Motion to Transfer this matter to the United States District Court for the Southern District of New York is granted.

## I. BACKGROUND

Plaintiff Mary Gentry is a resident of Mercer County, New Jersey. (Compl. at ¶ 2). Defendant Leading Edge Recovery Solutions, LLC is a business entity "regularly engaged" in the business of collecting debts in New Jersey with its principal place of business located in Chicago, Illinois. (*Id*. at ¶ 3). On April 16, 2013, Defendant sent a letter to Plaintiff's debt settlement company, the Law Offices of Robert S. Gitmeid & Associates, PLLC located in New York, New York, in an attempt to collect a debt in the amount of $9,427.63 allegedly owed by Plaintiff to FIA Card Services, N.A. (*Id*. at ¶¶ 6, 8).[2] According to the Plaintiff, the debt at issue arose out of consumer purchases made "primarily for personal, family or household purposes[.]" (*Id*. at ¶ 7). In the letter, which was addressed to the Plaintiff and signed by the Defendant's Collections Department, the Defendant wrote: "We must determine whether you have willful intentions in resolving this indebtedness. Furthermore, we have been authorized to recommend whether or not our client should refer this matter to their attorney network for a review to determine whether legal action should be commenced against you." (Pl.'s Br. in Opp. to Def.'s Mot. to Dismiss or Transfer ("Pl.'s Opp. Br.") at Ex. A). According to the Plaintiff, this statement "was an implied threat that Plaintiff would be sued if she did not pay her alleged debt." (Compl. at ¶ 10).

On April 26, 2013, Plaintiff filed a civil action for damages against Defendant in the Superior Court of New Jersey, Law Division, Special Civil Part, Mercer County alleging that Defendant's actions violated certain provisions of the FDCPA. Specifically, Plaintiff alleges that Defendant

---

[2] According to the Defendant, the letter in question was mailed by its "letter vendor" which is located in Michigan. (Def.'s Br. in Supp. of Mot. to Dismiss or Transfer Venue ("Def.'s Br.") at 3 n.1). Plaintiff formerly received statements for her Visa Signature credit card account with FIA Card Services, N.A. at her home address in Trenton, New Jersey, however, on July 3, 2012, she instructed FIA Card Services to send all further communications to her debt settlement company in New York. (Affidavit of Mary Gentry ("Gentry Aff.") at ¶ 5-6).

violated 15 U.S.C. § 1692e(5), which forbids a debt collector from "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken[]" and 15 U.S.C. § 1692e(10), which prohibits a debt collector from "us[ing] any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." (Compl. at 5). In her Complaint, Plaintiff argues that "[b]y threatening that legal action would be taken against [her], when in fact no such action was intended to be taken, [the Defendant] falsely raised the specter of potential legal action, in violation of the FDCPA." (*Id*.). Plaintiff claims that she "sustained actual damages including, but not limited to, emotional and mental pain and anguish" as a result of Defendant's conduct. (*Id*. at ¶ 16). Accordingly, Plaintiff seeks actual damages, statutory damages, and attorney's fees and costs from the Defendant. The Complaint was formally served upon the Defendant on May 6, 2013. (Def.'s Notice of Removal at ¶ 2).

On May 31, 2013, Defendant filed a timely Notice of Removal to remove this action to the United States District Court for the District of New Jersey. On June 21, 2013, Defendant filed the instant Motion to Dismiss or Transfer Venue to the United States District Court for the Southern District of New York. In its Motion, Defendant contends that this matter should be transferred because "the letter that forms the basis of the Complaint . . . was not only sent by Leading Edge from a non-New Jersey location, [but] it also was delivered to an out-of-state, New York address." (Def.'s Br. in Supp. of Mot. to Dismiss or Transfer Venue ("Def.'s Br.") at 1). The Defendant argues that "other than the bare allegation that Gentry is a New Jersey resident, there is no assertion concerning this case that relates in any way to New Jersey." (*Id*.). Furthermore, according to the Defendant, both private and public interests "weigh in favor of transfer because the action arose in New York, any non-party witnesses would be from New York, and New York is not an inconvenient forum for either party." (*Id*. at 12).

3

## II. DISCUSSION

### A. Standard of Review Under 28 U.S.C. § 1404(a)

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." § 1404(a) was designed to prevent "the wastefulness of time, energy and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense[.]" *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960). The decision to grant a motion to transfer lies within the sound discretion of the trial court. *See Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000). A plaintiff's choice of venue is not to be "lightly disturbed," and the moving party has the burden of establishing that the proposed transferee forum is proper and that a balancing of the relevant considerations weighs in favor of transfer. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). In making its determination, a "'district court is required to develop adequate facts to support its decision and to articulate specific reasons for its conclusion' that transfer to another venue is appropriate." *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 520 (D.N.J. 1998) (quoting *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 39 (3d Cir. 1988)).

The terms of § 1404(a) set forth three factors to consider when determining whether to transfer a matter: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *See* 28 U.S.C. § 1404(a). The transfer analysis, however, should not be limited to these three factors. Rather, when reviewing a motion to transfer, a court should consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice better served by transfer to a different forum." *Jumara*, 55 F.3d at 879.

Although the Third Circuit has emphasized that there "is no definitive formula or list of factors to consider" when deciding a motion to transfer, it has set forth a variety of relevant private and public interests that courts can examine in addition to those explicitly listed in § 1404(a). *See id.* The relevant private interests include: (1) plaintiff's forum preference; (2) defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (5) the location of books and records. *See id.* The relevant public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local disputes at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *See id.*

The transfer analysis is a "flexible and individualized analysis which must be made on the unique facts presented in each case." *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 450 (D.N.J. 1999). Indeed, § 1404(a) is "intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)). A district court's "determination that transfer to another district is appropriate represents an 'exercise[] of structured discretion by trial judges appraising the practical inconveniences posed to the litigants and the court should a particular action be litigated in one forum rather than another.'" *Lawrence*, 56 F. Supp. 2d at 450 (internal citations omitted). Ultimately, the moving party bears the burden of persuasion to prove that "the proposed alternative forum is not only adequate, but also more convenient than the present forum." *Id.* at 451.

B.  **Analysis**

   1. **Personal Jurisdiction and Venue**

First, as a threshold matter, this Court must determine if the Southern District of New York is a "district in which this action might have been brought" pursuant to § 1404(a). A district is one in which an action "might have been brought" if that district has (1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970); *see also CIBC World Markets, Inc. v. Deutsche Bank Securities, Inc.*, 309 F. Supp. 2d 637, 643-44 (D.N.J. 2004). In *Shutte v. Armco Steel Corp.*, the Third Circuit clarified that the relevant considerations in this regard are jurisdiction and venue:

> [A] transfer is authorized by [§ 1404(a)] only if the plaintiff had an 'unqualified right' to bring the action in the transferee forum at the time of the commencement of the action; *i.e.*, venue must have been proper in the transferee district and the transferee court must have had power to command jurisdiction over all of the defendants. *Shutte*, 431 F.2d at 24.

Here, the Southern District of New York would clearly have subject matter jurisdiction on the basis of the existence of a federal question pursuant to 28 U.S.C. § 1331, as Plaintiff's claims are governed by the FDCPA. In order to determine whether the Southern District of New York would have personal jurisdiction, this Court must conclude that that Court would have either general or specific jurisdiction over the Defendant. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-15, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

Specific jurisdiction over an out-of-state defendant exists when the defendant has purposefully directed its activities at residents of the forum state and the plaintiff's claim directly relates to or arises out of those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). In order for a court to properly exercise specific jurisdiction under the Due Process Clause, the plaintiff must satisfy a two-part test. First, the plaintiff must show

that the defendant has constitutionally sufficient "minimum contacts" with the forum. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). Second, the court must determine, in its discretion, that to exercise personal jurisdiction would "comport with traditional notions of fair play and substantial justice." *Id*. A plaintiff need only make a *prima facie* demonstration of jurisdiction by showing, with sufficient particularity, the presence of contacts between the defendant and the forum. *See Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). In examining whether the plaintiff has satisfied this *prima facie* burden, a court must resolve all disputes of material fact in favor of the plaintiff. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

In judging minimum contacts, a court properly focuses on the "relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977). Minimum contacts must have a basis in "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). Jurisdiction is proper where the contacts proximately result from the defendant's own actions, which create a substantial connection with the forum. *Burger King Corp.*, 471 U.S. at 475. Although a defendant's entrance into the forum state emboldens the defendant's affiliation with that forum, physical entrance into the forum is not required. *Id*. at 476. Moreover, personal jurisdiction is not defeated merely because the bulk of harm occurred outside the forum state. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 780, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984). Rather, a single act may satisfy minimum contacts if it creates a substantial connection with the forum. *See Burger King Corp.,* 471 U.S. at 476 n.18. Here, the Court finds that the Defendant purposely established the requisite minimum contacts with the State of New York by sending the

collection letter to Plaintiff's debt settlement company in New York. In doing so, the Defendant purposely availed itself of the privilege of conducting activities within the State, thereby invoking the benefits and protections of its laws. Moreover, the Plaintiff's FDCPA claims directly relate to and exclusively arise out of Defendant's transmission of the collection letter to her debt settlement company in New York.

Having determined that the Defendant purposefully established minimum contacts with the State of New York, the Court must decide whether New York's exercise of personal jurisdiction over the Defendant would comport with "fair play and substantial justice." *Id*. at 476. For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). In addressing this question, a court may contemplate "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies." *Miller Yacht Sales, Inc.*, 384 F.3d at 97. The analysis turns on whether the defendant could "reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp.*, 444 U.S. at 297. Only in "rare cases [do the] 'minimum requirements inherent in the concept of 'fair play and substantial justice' . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities.'" *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 116, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) (quoting *Burger King Corp.*, 471 U.S. at 477-78). Here, the Court finds that the Defendant could "reasonably anticipate being haled into court" in the State of New York based on its activities within the State. In fact, given that Defendant is requesting a transfer to New York, it can be presumed that Defendant finds it reasonable to defend against

Plaintiff's claims in that forum. Accordingly, the Court finds that the Southern District of New York would be able to exercise specific jurisdiction over the Defendant.

Finally, the Court finds that venue would be proper in the Southern District of New York because that is where a "substantial part of the events . . . giving rise to [Plaintiff's] claim occurred." 28 U.S.C. § 1391(b)(2). New York is where Plaintiff informed the Defendant to forward the instant communication, it is where the Defendant in fact forwarded the instant communication, and it is where the instant communication was received. Thus, this action may have been properly brought in the Southern District of New York.

### 2. Private Interest Factors

The Court must next determine whether the Southern District of New York is the more appropriate and convenient forum to hear this matter. With regard to the first private interest factor, the Court recognizes that a plaintiff's choice of forum is normally afforded great weight when deciding a motion to transfer. *See Jumara*, 55 F.3d at 879. The degree of deference afforded that choice, however, is reduced when, as here, the chosen forum has little connection with the dispute and the relevant acts giving rise to the claims occurred elsewhere. *See Santi v. Nat'l Bus. Records Mgmt., LLC*, 722 F. Supp 2d 602, 606 (D.N.J. 2010); *Ramada Worldwide v. Bellmark Sarasota Airport, LLC*, 2006 U.S. Dist. LEXIS 96543, at *3 (D.N.J. June 15, 2006) (stating that a plaintiff's choice of venue is given less weight where New Jersey had little connection with the dispute and "[s]ubstantially all of the relevant acts giving rise to [the] action occurred in Florida[.]"). Here, Plaintiff argues that, while the letter in question was sent to Plaintiff's agent in New York, "the harm which is the basis of this lawsuit occurred in New Jersey." (Pl.'s Opp. Br. at 8). According to the Plaintiff, "the contents of the letter, including its threat of litigation, were clearly meant to be conveyed to Plaintiff," and "it is obvious that [Defendant] would have sent its collection letter to

Plaintiff at her New Jersey residence had she not instructed that communications be sent to her debt settlement company instead." (*Id*. at 1, 8). The Defendant correctly points out, however, that "what 'would' have occurred is irrelevant; rather, what is relevant is what actually occurred which is that the letter was sent to New York" at Plaintiff's request. (Def.'s Reply Br. at 5). The Court declines to afford the Plaintiff's choice of forum great weight because she specifically requested that Leading Edge send the communication in question to her debt settlement company in New York. "Where the operative facts of a lawsuit occur outside the forum selected by the plaintiff, that choice is entitled to less deference." *AT&T Co. v. MCI Communc'ns Corp.*, 736 F. Supp. 1294, 1306 (D.N.J. 1990). Here, the operative facts of this lawsuit – the sending of the letter by Defendant's vendor in Michigan to Plaintiff's debt settlement company in New York – occurred outside the forum selected by the Plaintiff. Accordingly, the Court declines to afford heightened deference to Plaintiff's choice of forum and affords that choice only the ordinary deference due any plaintiff's forum selection.

As to the second factor, Leading Edge, a citizen of Illinois, would prefer to litigate this matter in the Southern District of New York where, it argues, the operative facts of this lawsuit occurred. Thus, this factor weighs in favor of transfer.

The third factor, where the claims arose, also weighs in favor of transfer. This factor "turns on which forum contains the center of gravity of the dispute, events, and transactions." *DePuy Synthes Sales, Inc. v. Gill*, 2013 U.S. Dist. LEXIS 154825, at *21 (D.N.J. 2013) (citing *Park Inn Int'l, LLC v. Mody Enters.*, 105 F. Supp. 2d 370, 377-78 (D.N.J. 2000)). Plaintiff does not dispute that the letter in question was sent to her debt settlement company in New York. Rather, she argues that the alleged harm resulting from the delivery of that letter occurred in New Jersey. (Pl.'s Opp. Br. at 8). While the Plaintiff is a New Jersey resident and the alleged debts were presumably incurred in this State, the letter that forms the sole basis of Plaintiff's Complaint was sent to

Plaintiff's debt settlement company in New York at Plaintiff's explicit direction. In determining a motion to transfer, "[t]he key inquiry is which forum contains the center of gravity of the parties' dispute." *DePuy Synthes Sales*, 2013 U.S. Dist. LEXIS 154825, at *22. Here, Plaintiff voluntarily requested that all communications be sent to her debt settlement company in New York. Because her claims arose only upon the transmission and receipt of the letter in question by her debt settlement company, the Court finds that New York is more appropriately defined as the center of gravity of this dispute. *See Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 868 (2d Cir. 1992) (concluding that "receipt of a collection notice is a substantial part of the events giving rise to a claim under the Fair Debt Collections Practices Act."). Accordingly, the third private interest factor weighs in favor of transfer.

Fourth, a consideration of the convenience of the parties slightly disfavors transfer to the Southern District of New York. Gentry is a resident of Mercer County, New Jersey and has limited financial resources. According to the Plaintiff, "it is clearly more convenient for Plaintiff to remain in New Jersey, especially in light of the fact that her financial situation is so dire that she had to enlist the services of a debt settlement company[.]" (Pl.'s Opp. Br. at 7). On the other hand, Defendant is a national collection agency with its principal place of business located in Illinois. Leading Edge does not allege that it has inadequate resources to litigate this dispute in New Jersey. Furthermore, given the close proximity between the two states, it cannot be said that Leading Edge would be greatly more inconvenienced by litigating this matter in New Jersey. While this factor tends to weigh against transfer, a mere difference of approximately seventy miles between courthouses does not create a major inconvenience for either party (depending on the traffic on the New Jersey Turnpike).

With respect to the fifth factor, transfer is appropriate here for the convenience of the witnesses. The convenience of witnesses is a factor to be considered "only to the extent that the witnesses may be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. When considering the convenience of the witnesses, a court must "scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of the evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." *Kelly-Brown v. Winfrey*, No. 11-4630, 2011 U.S. Dist. LEXIS 127213, at *13 (D.N.J. Nov. 3, 2011) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528, 108 S. Ct. 1945, 100 L. Ed. 2d 517 (1988)). In conducting a § 1404(a) transfer analysis, courts distinguish between party and non-party witnesses. "Party witnesses are presumed to be willing to testify in either forum despite an inconvenience, and therefore, the relative convenience of such witnesses carries little weight." *Liggett Grp., Inc. v. R. J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 534 n.19 (D.N.J. 2000). In contrast, the convenience of non-party witnesses is accorded greater weight in a § 1404(a) analysis. *See In re Consol. Parodel Litig.*, 22 F. Supp. 2d 320, 323 (D.N.J. 1998). Here, Defendant contends that "no non-party witnesses [will be] from New Jersey." (Def.'s Br. at 14). Rather, according to the Defendant, the only conceivable non-party witness would be Plaintiff's debt settlement company which is located within the Southern District of New York. (*Id*.). According to the Plaintiff, "witnesses . . . are located in both New Jersey and New York, so there is no advantage in one venue over the other." (Pl.'s Opp. Br. at 7). Notably, the Plaintiff has failed to identify by name any non-party New Jersey witnesses with information relevant to her claims and has not claimed that any of her potential witnesses would be unable to travel to New York if necessary. It appears to the Court, after scrutinizing the substance of this dispute, that the only non-party witnesses whose testimony would be critical or relevant to Plaintiff's claims, are the employees of

Plaintiff's debt settlement company which is located in the Southern District of New York. Accordingly, the convenience and attendance of non-party witnesses weighs heavily in favor of transfer.

Sixth, the private factor regarding the location of the relevant documents and records is neutral, as neither side has argued or proffered evidence to suggest that the transmission of documents to either forum would be unduly burdensome or expensive as to prevent their production. Thus, on balance, the private interests weigh in favor of transfer.

### 3. Public Interest Factors

When weighing the public interest factors involved in a § 1404(a) analysis, the Third Circuit has stated that a district court "must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of the conduct to a plaintiff's chosen forum." *Lacey*, 862 F.2d at 48 (internal quotations omitted). Here, after weighing the relevant public interests factors and taking into consideration "the locus of the alleged culpable conduct," the Court finds that the public interest factors also weigh in favor of transferring this matter to the Southern District of New York. As an initial matter, the Court notes that several of the § 1404(a) public interest factors are neutral under the facts presented in this case. For example, the parties have not identified a concern over congestion in either of the courts, nor have they pointed to any possible issues with the enforceability of a judgment rendered in either court. This is not a case involving a local dispute that might be best decided at home, nor is one court significantly more convenient for one of the parties. In addition, neither party has identified any practical considerations that could make the trial easy, expeditious or inexpensive in either court. Although New Jersey has an interest in protecting its citizens from alleged misrepresentations in connection with the collection of consumer debts, New York likewise has a significant interest in this action insofar as the alleged misrepresentation which

13

is the subject of this litigation took place in New York. Similarly, although the Court acknowledges Plaintiff's concern that litigating in New York as opposed to New Jersey may be more costly and burdensome for her, the practical considerations relevant to the transfer determination provide more support for Defendant's position. Indeed, as detailed above, it appears that all of the potential non-party witnesses are located in New York and the vast majority of the alleged events and conduct that form the basis of Plaintiff's claims occurred there. Accordingly, having considered the relevant private and public interests, the Court concludes that transfer of this matter to the Southern District of New York is appropriate.

    **4. Interests of Justice**

Finally, when determining the advisability of transfer, a court should consider whether the transfer would promote the interests of justice. Plaintiff argues that Defendant's Motion to Transfer to the Southern District of New York amounts to forum shopping in order to avoid the application of New Jersey law. Specifically, Plaintiff argues that Leading Edge seeks transfer to the Southern District of New York "to take advantage of the ostensibly more favorable New York law with regard to the FDCPA issues in this case." (Pl.'s Opp. Br. at 9). In support of her contention, Plaintiff cites to an e-mail from Leading Edge's in-house counsel, Timothy Tommaso, in which he cites to the New York case of *Okyere v. Palisades Collection, LLC*, 2013 U.S. Dist. LEXIS 40840, at *33 (S.D.N.Y. Mar. 22, 2013) for the proposition that "[f]or a misrepresentation to be actionable under the FDCPA, the false statement must be made to the debtor directly." Defendant responds to Plaintiff's forum-shopping accusation by stating that it "simply wishes to have the matter adjudicated in the locale where the alleged conduct occurred." (Def.'s Reply Br. at 4). The Court finds the Plaintiff's evidence to be unpersuasive for two reasons. First, as previously discussed, a substantial part of the events giving rise to Plaintiff's claims occurred in New York and Plaintiff specifically requested that

14

Defendant send all communications to her debt settlement company within that State. Second, a federal judge in the Southern District of New York is more than capable of interpreting and applying New Jersey law if he or she finds that New Jersey law is applicable here. *See Yocham v. Novartis Pharms. Corp.*, 565 F. Supp. 2d 554, 560 (D.N.J. 2008) (stating that federal judges are "regularly called upon to interpret the laws of jurisdictions outside of the state in which they sit."). Accordingly, the Court finds that the interests of justice are also served by transfer of this matter to the Southern District of New York.

## III.  CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 5) is denied as moot and Defendant's Motion to Transfer this matter to the United States District Court for the Southern District of New York for improper venue (ECF No. 5) is granted.

**ORDER**

**IT IS** on this 10th day of January, 2014, hereby:

**ORDERED** that Defendant's Motion to Dismiss for lack of personal jurisdiction (ECF No. 5) is **DENIED** as moot; and it is further

**ORDERED** that Plaintiff's Motion to Transfer this matter to the United States District Court for the Southern District of New York (ECF No. 5) is **GRANTED**; and, it is further

**ORDERED** that his matter be and is hereby transferred to the United States District Court for the Southern District of New York; and, it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

January 10, 2013                                               *s/Peter G. Sheridan*
                                                                                PETER G. SHERIDAN, U.S.D.J.